IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Dodgeland of Columbia, Inc., | ) | C/A No. 3:09-cv-1190-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Federated Mutual Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an insurance coverage dispute. Dodgeland of Columbia contends that it suffered a covered loss when a North Carolina company failed to complete modifications on vehicles that Dodgeland sold to its customers. Dodgeland also contends that its insurer, Federated Mutual Insurance Company, acted in bad faith. Federated filed a motion for summary judgment contending that the insurance policy does not cover the loss suffered because Dodgeland did not own the vehicles at the time of loss, the loss was not the type of loss that the policy was intended to cover, there is no evidence of a criminal scheme, and Federated did not act in bad faith [Doc. 32]. The court heard oral argument on June 9, 2010, and took the matter under advisement. After considering the written materials submitted and the arguments of counsel, the court grants the motion.

I.  **Factual and Procedural Background**

Dodgeland is a car dealership in Columbia, South Carolina, that obtained an insurance policy from Federated Mutual Insurance Company. By its terms, the insurance policy provides coverage for "loss" to "covered autos." "Loss" means direct and accidental loss or

damage, and includes loss of use for vehicles held by the insured while the insured is attending to, servicing, or repairing the vehicle. "Covered autos" includes autos owned by the insured, autos left with the insured on consignment for sale, and autos held by the insured's "garage operations" for sale, storage, and safe keeping.

Among other things, the policy provides coverage for physical damage that occurs to the vehicle when the insured is induced to voluntarily part with title or possession of a vehicle because of a criminal scheme, criminal trick, or criminal devise. The policy does not, however, cover losses resulting from an obligation under a contract or agreement in which the insured agrees to accept responsibility in the event of default by the purchaser, or losses resulting from non-payment for any reason or for any credit extended. Further, the policy does not pay for the loss of use for property not physically damaged if the loss was caused by a delay or failure by the insured or anyone acting on the insured's behalf to perform a contract or agreement in accordance with its terms. Finally, the policy does not provide coverage for diminution in value.

Dodgeland claims that it suffered a covered loss when a North Carolina company (Coleman Lane) failed to complete modifications to vehicles that Dodgeland sold to its customers. The customers purchased the vehicles from Dodgeland with the understanding that Coleman Lane would lengthen and modify the vehicles to carry 20-foot electronic scrolling advertising billboards. The price paid for the vehicles included the cost of the modifications.

Dodgeland contracted with Coleman Lane to perform the modifications. Having done

2

business with Coleman Lane in the past, Dodgeland paid Coleman Lane in advance. Coleman Lane represented that it would take 45 days to complete the modifications. Coleman Lane subcontracted a portion of the work to A-1 Truck Stop.

Shortly after the vehicles were sold and delivered to Coleman Lane, Coleman Lane went out of business. As a result, Coleman Lane never completed the modifications as promised. Dodgeland believes that Coleman Lane tricked Dodgeland into delivering the vehicles and paying for the work in advance. Dodgeland contends that Coleman Lane knew that it (Coleman Lane) did not have the scrolling boards to install on the vehicles; fired its workers prior to accepting delivery of the vehicles; lied about the status of the vehicles to induce Dodgeland to finance the next purchase; never attempted to complete the work; and disappeared after the criminal "scheme" was discovered.

As a result of Coleman Lane's conduct, Dodgeland filed a criminal complaint against Coleman Lane in March of 2009. In addition, Dodgeland contacted its insurer, Federated, about the financial loss suffered. Two customers returned their the vehicles. Dodgeland paid to have the work completed on one of the vehicles, installing a static (as opposed to a scrolling) billboard, and paid A-1 Truck Stop, the subcontractor, for work performed on behalf of Coleman Lane.

Federated denied coverage, claiming that the alleged loss arose out of an unfulfilled contract between Dodgeland and Coleman Lane. Federated also denied the claim because Dodgeland did not own the vehicles at the time of loss, and the loss was economic in nature and not the result of direct harm or an accident.

3

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party opposing summary judgment "must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

"The party seeking summary judgment carries the burden of showing that there is no genuine issue as to any material fact in the case." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). "When determining whether the movant has met its burden, the court must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id.*

## III. Law and Analysis

Federated argues that summary judgment should be granted because (1) Dodgeland did not own the vehicles at the time of loss, (2) the insurance policy excludes coverage for contractual liability, and (3) there is no evidence that Dodgeland was induced to part with the vehicles pursuant to a criminal scheme or trick. Federated also argues that there is no evidence of bad faith. The court agrees.

To begin, the vehicles were not "covered autos" under the policy at the time of loss. At the time of loss, Dodgeland had sold the vehicles to its customers and had delivered the vehicles to a third party to perform the additional work. The vehicles were not owned by Dodgeland or in Dodgeland's custody or control. Recognizing this, Dodgeland argues that

4

the sale of the vehicles was contingent on the customer receiving a completed, modified vehicle. But the customers had already executed the sales contracts and financing agreements and had agreed to pay the full price, including the cost of the modifications. Although the modifications still had to be performed, the sale was complete. *See State v. Small*, 63 S.E. 4 (S.C. 1908) (providing that the sale of personal property is complete when the seller intends to transfer title and the buyer intends to accept it, irrespective of whether something remains to be done).

Further, the policy does not cover the type of loss suffered in this case. The loss suffered in this case was economic in nature and not the result of any direct or accidental harm to the vehicles. Dodgeland was financially harmed because Coleman Lane failed to fulfill its contractual obligations. Dodgeland released two of its customers from their sales and financing agreements; installed a fixed (rather than scrolling) billboard on one of the vehicles; and paid for the work performed by the subcontractor on behalf of Coleman Lane. But none of these losses are covered under the policy. The policy specifically excludes coverage for harm caused by a delay or failure by the insured or anyone acting on the insured's behalf to perform a contract or agreement in accordance with its terms.

Dodgeland argues, however, that the vehicles were damaged from the modifications that had already been performed. But such damage, if any, was specifically contracted for and cannot trigger coverage under the policy. In addition, such damage constitutes diminution in value, which is also excluded under the policy. Accordingly, the economic loss suffered in this case was not the type of harm that the policy was intended to cover. *See*

5

*Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995) (providing that "if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties").

Moreover, Dodgeland has failed to present any evidence creating a genuine issue of material fact as to whether it was induced to voluntarily part with the vehicles because of a criminal scheme, criminal trick, or criminal devise. Dodgeland argues that Coleman Lane lied about the status of the work and its ability to install the 20-foot scrolling boards, never completed the work as promised, and disappeared after the alleged scheme was discovered. But Dodgeland dealt with Coleman Lane in the past, and there is no evidence that the transactions involved in this case were handled any differently than the prior arrangements. The fact that Dodgeland may have trusted Coleman Lane does not create a genuine issue of material fact as to whether Dodgeland was induced in this instance to part with the vehicles because of some criminal scheme or devise. In short, there is no evidence that the failure to perform the modifications was part of a criminal scheme or plan. Nor is there any evidence that Dodgeland was induced by the alleged criminal scheme to part with the vehicles. Dodgeland parted with the vehicles because that is what it contracted to do.

Finally, there is no evidence of bad faith on the part of Federated. "Bad faith is a knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim." *Doe v. S.C. Med. Malpractice Liability Joint Underwriting Assn.*, 557 S.E.2d 670, 674 (S.C. 2001). "[A]n insurer acts in bad faith where there is no reasonable

basis to support the insurer's decision." *Id.* Here, Federated had more than one reasonable basis to support its decision not to pay. First, Dodgeland did not own or possess the vehicles. Second, Dodgeland did not present any evidence, other than the criminal complaint submitted against Coleman Lane, that the vehicles were sold pursuant to a criminal scheme. Third, the losses stemmed from a failed contractual agreement, not any direct or accidental harm to the vehicles.

## IV. Conclusion

Viewing the evidence in the light most favorable to the plaintiff, the court finds that there are no genuine issues of material fact in this case. The vehicles were not covered under the policy at the time of loss, the loss suffered by the plaintiff was due to a failed contractual agreement with a third party, and there is no evidence that a criminal scheme or plan was behind the loss. For these reasons, the court grants the defendant's motion for summary judgment [Doc. 32]. Consequently, Federated is entitled to judgment as a matter of law on its counterclaim seeking a declaration that the insurance policy does not provide coverage.

       IT IS SO ORDERED.

June 16, 2010                                                                       Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge